IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALLISA D. GAY,

*Plaintiff,*

v.

A.O. SMITH CORPORATION, *et al.*,

*Defendants.*

Civil Action No. 2:19-cv-1311

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Gardner Denver, Inc. ("Gardner") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 877). The Court must determine whether Plaintiff properly identified Gardner's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Defendant's Motion is granted.

## I.       Background

This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive

work starting in the 1940s.  (*See* ECF Nos. 1-1; 1-2).  Mr. Gay was diagnosed with mesothelioma in June 2019.  (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products.  Mr. Gay died on April 12, 2020.  (ECF No. 1-15, ¶ 165; ECF No. 675).  His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020.  (ECF No. 692).  Allisa Gay was substituted as Plaintiff.  (*Id.*).

## II.    Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing pumps and compressors while working aboard the USS Blower and USS Blackfin; at the SM-1 facility in Ft. Belvoir, Virginia; and at the Beaver Valley Power Station.  (ECF No. 936).

Plaintiff offered three pieces of evidence to establish that Mr. Gay encountered Gardner pumps and compressors throughout his career.  The first was Plaintiff's research of the National Archives tying Gardner pumps to the USS Blower and USS Blackfin.  (ECF No. 944-5).  The research from the National Archives listed Gardner's products allegedly incorporated into the two submarines.  (ECF No. 944-5).  The second piece of evidence was Mr. Gay's deposition recalling Gardner at the SM-1 facility.  (ECF No. 877-3).  Mr. Gay was deposed over nine days and offered testimony about Gardner on November 13, 2019.  (ECF No. 877-3).  Mr. Gay recalled Gardner pumps and compressors generally but did not specifically recall working directly with those products and did not remember working around someone else who was working with those products.  (*Id.* at 1–6).  In his deposition, Mr. Gay, when asked where he encountered Gardner pumps, stated, "I believe that we had them at the SM-1."  (*Id.* at 3).  When asked how the Gardner

pumps were used or their specific application, Mr. Gay could not recall. (*Id.* at 4). The third piece of evidence was the deposition of Mr. James Daugherty who testified in a different litigation about his tenure at Beaver Valley Power Station. (ECF No. 944-8). Mr. Daugherty testified that he began working at Beaver Valley in 1976 but did not start entering Beaver Valley Unit 1 until 1978. (*Id.* at 2, 4, 7–8). Mr. Daugherty recalled seeing Gardner pumps in 1978. (*Id.* at 7).

### III.    Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### IV.    Applicable Law

#### A. Pennsylvania Law Applies

The parties agree that Pennsylvania substantive law applies although some of the alleged exposures occurred on a U.S. Navy submarine. Under traditional admiralty choice of law rules, a court may apply state law if it does not conflict with federal admiralty law. *See Calhoun v. Yamaha Motor Corp., U.S.A.,* 40 F.3d 622 (3d Cir. 1994); *see also Floyd v. Lykes Bros. S.S. Co.,* 844 F.2d 1044, 1046–47 (3d Cir. 1988) (courts may substitute state law with maritime law when maritime

law is silent or a local matter is at issue but may not apply state law where it would conflict with maritime law); *Centennial Ins. Co. v. Lithotech Sales, LLC,* 29 F. App'x. 835, 836 (3d Cir. 2002) (maritime law displaces only inconsistent state law). For these reasons, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

**B. Causation Standard**

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's or decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that he inhaled asbestos fibers of the

specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

## V.    ANALYSIS

Defendant moves for summary judgment arguing that it is not liable for injuries caused by asbestos products for two reasons.  First, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Gardner.  Second, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Gardner on a regular, frequent or proximate basis.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)).  Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from defendant's product.").  The Court has a "duty to prevent questions from going

to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

### A. Plaintiff Failed to Identify Where Gardner's Products Were Present at Mr. Gay's Worksites.

Plaintiff failed to supply evidence establishing that Mr. Gay worked around Defendant's products containing asbestos. Plaintiff cannot show that Mr. Gay was exposed to any of those products. For example, Plaintiff provided a Naval Records Equipment List prepared by JRG Asbestos Research. (*See* ECF No. 944-5). The document identified Gardner as one of five manufacturer's pumps aboard the USS Blackfin and USS Blower. (*Id.*). But the document is incomplete and does not reveal where the pumps were located, how they were used or even if they contained asbestos. The Court holds that Plaintiff's reliance on the Naval Records Equipment List does not prove that Mr. Gay was exposed to asbestos from Gardner's pumps with the requisite frequency, regularity and proximity.

Plaintiff also cited Mr. Daugherty's deposition to try to establish that Defendant's products were present at the Beaver Valley Power Station while Mr. Gay worked there. (ECF No. 944-8). Plaintiff conceded, though, that Mr. Daugherty started working at the power station after Mr. Gay left. (ECF No. 944, p. 12). The Pennsylvania Superior Court in *Sterling v. P&H Mining Equip., Inc.*, 113 A.3d 1277, 1282 (Pa. Super. 2015), held although other workers had testified about their own exposures in their own cases, their testimony "did nothing to show that [the plaintiff] inhaled dust" from the equipment at issue. *Id.* at 1282. The court found such testimony insufficient to establish the "frequency, regularity, or proximity of [the plaintiff's] own alleged exposure." *Id.* at 1283. Showing that a product was present at a workplace does not establish that a plaintiff was exposed to that product. *See Eckenrod*, 544 A.2d at 52 ("[A] plaintiff must establish more than

the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use.").

Gardner contends Plaintiff's use of the JRG Asbestos Research as violating the Federal Rules of Evidence.  Regardless if the research is admissible, it is insufficient.  The research merely shows that Gardner's pumps were somehow incorporated into the USS Seawolf.  It does not describe how or where, and it does not establish that the pump from Gardner contained asbestos. A "plaintiff must establish more than mere presence of asbestos in the workplace; he must prove that he worked in a vicinity in which a specific manufacturer's product was used." *Gutteridge*, 804 A.2d at 652.  The Court holds that Plaintiff's research cannot establish Gardner's pump contained asbestos and that Mr. Gay was exposed to it with sufficient frequency, regularity and proximity.

As for Mr. Gay's work at the SM-1 nuclear power station in Ft. Belvoir, Virginia, Mr. Gay never identified Gardner's pumps after naming several other manufacturers.  (ECF No. 944-3, p. 2).  A "plaintiff must establish more than mere presence of asbestos in the workplace; he must prove that he worked in a vicinity in which a specific manufacturer's product was used." *Gutteridge*, 804 A.2d at 652.  The Court holds that Plaintiff's proffered evidence cannot establish Mr. Gay worked near asbestos-containing materials manufactured by Defendant.

### B. Plaintiff Failed to Establish Mr. Gay Was Exposed to Gardner Pumps and Compressors with Requisite Frequency, Regularity and Proximity.

Plaintiff has no record to show that Mr. Gay was exposed to Gardner's pumps and compressors with the necessary frequency, regularity and proximity.  The Pennsylvania Supreme Court in *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 225 (Pa. 2007) adopted the reasoning of the Seventh Circuit in *Tragarz v. Keene Corp.*, 980 F.2d 411 (7th Cir. 1992).  The Seventh Circuit held that the frequency, regularity and proximity of exposure criteria do not establish a rigid

standard with an absolute threshold necessary to support liability. *Tragarz*, 980 F.2d at 420. Instead, a court should apply the criteria in an evaluative fashion to help distinguish cases in which a plaintiff can proffer evidence showing a sufficient likelihood that the defendant's product caused the harm, from a case in which such likelihood is not present because of casual or minimal exposure to the defendant's product. *Id.* Plaintiff cites the testimony of James Daugherty to establish that Gardner pumps were present at the Beaver Valley Power Station years after Mr. Gay left the facility. (*See* ECF No. 947, pp. 10–11). That testimony does not establish that Mr. Gay was exposed to a Gardner pump, let alone one that contained asbestos.

Plaintiff cited the deposition of Gardner corporate representative, John D. Kendall, which showed that certain Gardner pumps may have incorporated asbestos-containing components. (ECF No. 944-10). The testimony, though, provides no other specifics beyond generalizations that Gardner created asbestos-containing products.

Defendant highlights that, ultimately, the record shows that Defendant may have supplied some asbestos-containing products to certain locations that Mr. Gay worked during his career but does not show if these products were ever used or installed, where they were used, if any maintenance was performed on them or if Mr. Gay was present during this effort. (ECF No. 964, p. 3). Defendant continues that the facts taken in a light most favorable to Plaintiff show no more than the mere presence of Defendant's product at Mr. Gay's workplace. (*Id.*). The evidence goes no further to show that Mr. Gay was exposed to asbestos from a Gardner product. (*Id.*).

The Court agrees that a factfinder could not find for Plaintiff without making several inferential leaps. *See Liberty Lobby*, 477 U.S. at 248. Plaintiff does not provide facts to establish that Mr. Gay worked with or around an asbestos-containing product of Gardner. For these reasons,

the Court finds Plaintiff failed to proffer enough evidence to show Air & Liquid's pumps were a substantial factor in Mr. Gay's mesothelioma.

## VI.   Conclusion

The Court finds that a genuine issue of material fact does not exist in this case.  As a result, Defendant's Motion for Summary Judgment is granted.  Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-26-21
_____
Dated