IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>             *Plaintiff,*<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>             *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

      Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Mueller Steam Specialty ("Mueller Steam") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Mueller Steam's Motion for Summary Judgment. (ECF No. 881). The Court must determine whether Plaintiff has properly identified Mueller Steam's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Mueller Steam's Motion is granted.

**I.    Background**

      This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive

work starting in the 1940s. (*See* ECF Nos. 1-1; 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (ECF No. 1-15, ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II.     Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products between 1974 and 1976 while working at the Beaver Valley Power Station as an employee of Stone & Webster. (ECF No. 943, p. 1). Plaintiff alleges Mr. Gay was exposed to asbestos from Mueller Steam's strainers and steam traps. (*Id.*).

Mr. Gay inspected all piping systems installed at the Beaver Valley Power Station. (ECF No. 943-1, ¶ 24). He ensured all piping systems and equipment met the specifications required by the plant. (*Id.*). He was near construction workers who installed new equipment. (*Id.*).

James Daugherty testified in an unrelated case about his experience at the Beaver Valley Power Station. (ECF No. 943-4). Mr. Daugherty began working at the Beaver Valley Power Station in 1976 after Mr. Gay left. (*Id.* at 2–3). Mr. Daugherty started training for a special license in 1978. (*Id.* at 4). That work required that he enter and inspect Unit 1 of the Beaver Valley Power Station where Mr. Gay had worked. (*Id.* at 4–5). Mr. Daugherty identified Mueller steam traps in Unit 1 and remembered seeing them starting in 1979. (*Id.* at 7–8).

### III. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### IV. Applicable Law

#### A. Pennsylvania Law Applies

The parties agree that Pennsylvania substantive law applies. For that reason, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

#### B. Causation Standard

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme

Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id*. at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

### V.     ANALYSIS

Defendant moves for summary judgment because it is not liable for injuries caused by asbestos products for three reasons. First, Mr. Gay did not identify Mueller Steam in either his deposition or his affidavit. Second, Mueller Steam did not sell steam traps during the time Mr. Gay worked at the Beaver Valley Power Station. Finally, Plaintiff's evidence failed to establish that Mr. Gay was exposed to Mueller Steam products with the requisite frequency, regularity and proximity.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's

product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

### A. Mr. Gay Did Not Identify Mueller Steam in Either His Deposition or His Affidavit.

Mr. Gay was deposed over nine days and never identified Mueller Steam. (ECF Nos. 943-1; 943-2; 943-3; 943-4). A "plaintiff must establish more than mere presence of asbestos in the workplace; he must prove that he worked in a vicinity in which a specific manufacturer's product was used." *Gutteridge*, 804 A.2d at 652. The Court holds that Plaintiff's proffered evidence cannot establish Mr. Gay worked near asbestos-containing materials manufactured by Defendant.

### B. Mueller Steam Did Not Sell Stream Traps During the Time Mr. Gay Worked at the Beaver Valley Power Station.

Plaintiff proffered testimony that Mr. Gay worked at the Beaver Valley Power Station from March 1974 to the summer of 1976. Plaintiff cited Mr. Daugherty's deposition to establish that Defendant's products were present at the Beaver Valley Power Station while Mr. Gay worked there. (ECF No. 943). Mr. Daugherty, in his deposition, said he recalled seeing Mueller steam

traps in 1979. (ECF No. 943-4, p. 7). Plaintiff conceded, though, that Mr. Daugherty started working at the power station after Mr. Gay left and that his recollection postdates Mr. Gay's tenure. (ECF No. 943, p. 6). The Pennsylvania Superior Court in *Sterling v. P&H Mining Equip., Inc.*, 113 A.3d 1277, 1282 (Pa. Super. 2015), held although other workers had testified about their exposures in their cases, their testimony "did nothing to show that [the plaintiff] inhaled dust" from the equipment at issue. *Id.* at 1282. The court found such testimony insufficient to establish the "frequency, regularity, or proximity of [the plaintiff's] own alleged exposure." *Id.* at 1283. Showing that a product was present at a workplace does not establish that a plaintiff was exposed to that product. *See Eckenrod*, 544 A.2d at 52 ("[A] plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use.").

Plaintiff cites Mueller Steam's discovery responses served in a West Virginia case and verified by Cathy Hayes Stanley. (ECF No. 943-5). Cathy Hayes Stanley is the former customer service manager and current corporate representative of Mueller Steam. (ECF No. 984, p. 2). From those documents, Plaintiff established that Mueller Steam manufactured strainers. (*Id.*).

Defendant highlights the fact that Mueller Specialty did not sell steam traps until 1986, ten years after Mr. Gay left the Beaver Valley Power Station. (*Id.* at 2–3). In an affidavit from a different case, Ms. Hayes Stanley stated, "Muller Steam Specialty never manufactured steam traps." (ECF No. 984-1, p. 1). Mueller Steam sold steam traps manufactured by another company under the Mueller Steam Specialty name. (*Id.*). Mr. Daugherty claimed to have seen Mueller Steam traps, but steam traps and strainers are different systems. The steam traps Mr. Daugherty identified must have been from a different manufacturer because Mueller Steam never manufactured steam traps and only sold them after 1986. The Court finds Plaintiff did not properly identify Mueller Steam's products.

### C. Plaintiff Failed to Establish That Mr. Gay Was Exposed to Asbestos-Containing Products of Mueller Steam with the Requisite Frequency, Regularity or Proximity.

Since Plaintiff did not identify Mueller Steam by name and Mueller Steam did not sell steam traps during the relevant time, Plaintiff has failed to establish ever being around a Mueller Steam product on any occasion let alone on a regular, frequent, and proximate basis. Neither Plaintiff's expert nor decedent ever discussed Mueller Steam products. The Court agrees that a factfinder could not find for Plaintiff without making several inferential leaps. *See Liberty Lobby*, 477 U.S. at 248. Plaintiff does not provide facts to establish that Mr. Gay worked with or around an asbestos-containing product of Gardner. For these reasons, the Court finds Plaintiff failed to proffer enough evidence to show Air & Liquid's pumps were a substantial factor in Mr. Gay's mesothelioma.

### VI. Conclusion

The Court finds that a genuine issue of material fact does not exist in this case. As a result, Defendant's Motion for Summary Judgment is granted. Orders of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-27-21
Dated