IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL E. GAY,<br><br>    *Plaintiff,*<br><br>  v.<br><br>A.O. SMITH CORPORATION, *et al.,*<br><br>    *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Carrier Corp. ("Defendant") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Carrier's Motion for Summary Judgment. (ECF No. 902). The Court must determine whether Plaintiff has properly identified Carrier's product as a substantial cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Carrier's Motion is granted.

  **I.**  **Background**

  This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the U.S. Navy from 1946 to 1958, the U.S. Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive work starting

1

in the 1940s. (*See* ECF Nos. 1-1, 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (*Id.* ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (*Id.* ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

**II.     Relevant Facts**

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products while working on vessels operated by the U.S. Navy. Plaintiff alleges Mr. Gay was exposed to asbestos products used with Carrier's air conditioning units aboard three U.S. Navy submarines: the USS Seawolf, the USS Blower and the USS Blackfin. Throughout his deposition, Mr. Gay recalled Carrier air conditioning units aboard these submarines during the 1940s and 1950s. Mr. Gay offered differing testimonies throughout his deposition regarding his exposure to these products. Between 1946 and 1947, Mr. Gay served as an engineman aboard the USS Blower. (ECF No. 950, ¶ 5). He recalled Carrier handlers aboard USS Blower. At one point, Mr. Gay, during his deposition, testified to working on the air conditioning unit on the USS Blower.

```
21.     Q.  Did you yourself do maintenance work on that
22.         Carrier air conditioner?
23.     A.  Rarely.
```

(*Id.* at 7). Later, though, Mr. Gay testified that he never worked on the unit and did not recall others working on the unit.

```
15.     Q.  All right. Now, on the—the Blower—the
16.         USS Blower, what type of work, if any, did you have to
17.         do on the air-conditioning equipment?
```

2

```
18.    A. I done none. Nothing on it.
19.    Q. Nothing on it?
20.    A. Not on the Blower, no.
21.    Q. Okay. Were you nearby when anybody did any
22.       work on the Carrier air-conditioning equipment on the
23.       Blower?
24.    A. I don't remember that.
```

(ECF No. 950-3, p. 3).

For his service on the USS Blackfin, Mr. Gay provided the following in his deposition.

```
6.     Q. Okay. On the Blackfin, what type of work
7.        did you do on the air-conditioning equipment? The
8.        Carrier air-conditioning equipment on the Blackfin, if
9.        any?
10.    A. I don't remember working on that. The
11.       Blackfin, it—put it back in commission, was
12.       refurbished mostly by the yard.
```

(*Id.*).

While aboard the USS Seawolf, Mr. Gay performed work on the internal components of one Carrier refrigeration unit, which involved removing and replacing four shipyard-supplied flange gaskets. (ECF No. 902-2, pp. 30–31, 34). Plaintiff presented evidence that Mr. Gay removed internal gaskets easily, which did not generate dust. (*Id.* at 33–35). Replacing the four flange gaskets took a few minutes and required the use of a wire brush. (*Id.*). Mr. Gay did not need to resize the gaskets as they were preformed and did not require manipulation. (*Id.* at 30–31).

### III.   Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

**IV.   Applicable Law**

**A. Maritime Law Applies**

The U.S. Constitution authorizes federal courts to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Relatedly, "Congress has embodied that power in a statute," *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995), conferring district courts with original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

A party seeking to invoke maritime jurisdiction under § 1333 in an asbestos-related claim must satisfy both a locality and a connection test. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 458–59 (E.D. Pa. 2011) ("*Conner I*"). The locality test "is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id.* at 466. The connection test is met if (1) the exposure "had a potentially disruptive impact on maritime commerce" and (2) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* at 463 (citation omitted).

As to the first prong of the connection test, the court in *Conner I*, 799 F. Supp. 2d at 463, held that alleged asbestos exposure has a potentially disruptive effect on maritime commerce where that exposure affects a sailor whose job it is to maintain equipment integral to the

functioning of the vessel on which the sailor served. In that situation, exposure to a defective product could "potentially slow or frustrate the work being done on the vessel." *Id.* at 465 (quoting *John Crane, Inc. v. Jones*, 650 S.E.2d 851, 854 (Va. 2007)). Turning to the second prong, the court in *Conner I* found that an allegedly defective product has a substantial relationship to traditional maritime activity where the product at issue is essential for the proper functioning of the vessel. The court held that the defendant's manufacturing of the allegedly defective product is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply to the suit at hand." *Id.* at 469.

Both the locality test and the connection test are met here. Gay's alleged asbestos exposure occurred on U.S. naval vessels on navigable waters. The exposure had potentially disruptive effects on maritime commerce. Defendant manufactured products critical for the functioning of the vessel. These circumstances create a substantial relationship to traditional maritime activity. *See id.* Because both tests are met, maritime law governs.

### B. Causation Standard

To establish causation in a claim for asbestos-related personal injuries under maritime law, a plaintiff must show that (1) the plaintiff was exposed to the defendant's product, and (2) that the product was a substantial factor[1] in causing the plaintiff's injury. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). "In establishing causation, a plaintiff may rely upon direct evidence

---

[1] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement specify that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (Am. L. Inst. 1965).

(such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at* 1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376).

Minimal exposure to a defendant's product does not establish causation. Likewise, establishing that a defendant's product was merely present at a plaintiff's place of work is insufficient. *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). Instead, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). A "[t]otal failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark*, 21 F. App'x at 376 (citations omitted).

Under maritime law, a defendant may not assert the bare-metal defense. In *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019), the United States Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." The Supreme Court held that a product manufacturer must warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995–96.

V.   ANALYSIS

Defendant moves for summary judgment because it is not liable for injuries caused by asbestos products because Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Carrier on a regular, frequent or proximate basis.

To succeed on either a negligence or a strict liability theory under maritime law in a products liability case, a plaintiff must establish causation. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). To do so, a plaintiff must show: "(1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012).

A plaintiff may prove that a defendant's product was a substantial factor using either direct evidence or "circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, Civ. A. No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012). A demonstration of "minimal exposure" to a defendant's product is not sufficient. *Id.* Rather, the plaintiff must show "substantial exposure" to allow a reasonable inference—based on more than conjecture—that the defendant's product was a substantial factor in causing the plaintiff's injury. *Lindstrom*, 424 F.3d at 492. "[T]he question of 'substantiality' is one of degree normally best left to the fact-finder." *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995)).

Internal inconsistencies do not create a genuine issue of material fact to preclude summary judgment. *In re Asbestos Prods. Liab. Litig. (No. V)*, 578 F. App'x 160, 161 (3d Cir. 2014) (affirming the district court's decision to grant summary judgment for the defendants because the

7

plaintiff's internal contradictions within its depositions did not create a triable fact). Here, although Plaintiff presents conflicting evidence between the affidavits and the depositions, Plaintiff cannot show that Mr. Gay's exposure to asbestos from Carrier's air conditioning unit was a substantial cause of his disease. Mr. Gay stated he could not recall working on air-conditioning units for either the USS Blackfin or USS Blower. (ECF No. 950-3, p. 3). The focus of the argument then becomes Mr. Gay's exposure to Carrier's products on the USS Seawolf. As for his exposure on the USS Seawolf, Mr. Gay recalled only one time he worked on the air-conditioning equipment, which involved replacing gaskets. (ECF No. 902-2, pp. 30–31, 34). The whole process only took a few minutes. (*Id.*). Taken altogether, these facts do not show that they were a substantial cause of Mr. Gay's mesothelioma. Mr. Gay's career spanned nearly fifty years. In light of governing law in causation, a jury could not reasonably find that these few minutes of exposure were a substantial cause of his disease.

### VI.     Conclusion

The Court finds that a genuine issue of material fact does not exist in this case. As a result, Defendant's Motion for Summary Judgment is granted. Orders of Court will follow.

BY THE COURT:

*/s/ William S. Stickman IV*
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-27-21
Dated