IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>    *Plaintiff,*<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>    *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Air & Liquid Systems Corp. ("Air & Liquid"), as successor by merger to Buffalo Pumps, Inc., and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Air & Liquid's Motion for Summary Judgment. (ECF No. 904). The Court must determine whether Plaintiff has properly identified Air & Liquid's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Air & Liquid's Motion is GRANTED.

  **I. Background**

  This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General

Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive work starting in the 1940s. (*See* ECF Nos. 1-1, 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (*Id.* ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (*Id.* ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II. Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products while working at various sites throughout Mr. Gay's career. Plaintiff contends Mr. Gay was exposed to asbestos products aboard the USS Seawolf before 1959; the SM-1 power plant at Ft. Belvoir, Virginia; and the Beaver Valley Power Station Unit 1 in Shippingport, Pennsylvania during the 1970s. (ECF No. 947, p. 2). Air & Liquid is a successor by merger to Buffalo Pumps, Inc. (ECF No. 905, p. 1). Buffalo Pumps manufactured pumps used throughout the United States. Mr. Gay did not identify Defendant in his deposition and did not allege exposure to any asbestos-containing product manufactured, supplied or used by Defendant. (ECF No. 905, p. 2).

As part of his training for serving aboard the USS Seawolf, Mr. Gay attended Union College in Schenectady, New York and went to a General Electric facility in West Milton, New York where he worked inside a prototype of a nuclear submarine identical to the USS Seawolf. (ECF No. 905-2, pp. 3–5). Mr. Gay served aboard the USS Seawolf as an engineman during its maiden voyage and stayed with the submarine until July 1958. (*Id.* at 13).

Mr. Gay also spent nine years serving in the U.S. Air Force and was assigned to the SM-1 facility at Ft. Belvoir, Virginia from 1958 until January 1961. (*Id.* at 16). During that time, Mr. Gay worked on pumps by packing them and taking them apart. (*Id.* at 18). He returned to the SM-1 facility as a supervisor in 1967. (*Id.* at 16).

Between 1974 and 1976, Stone & Webster employed Mr. Gay where he worked at the Beaver Valley Power Station Unit One, a nuclear power plant. Mr. Gay believed he was exposed to asbestos through the work of outside contract employees during the 1970s. (ECF No. 947-4, ¶ 24).

Defendant supplied blueprints, which called for asbestos gaskets, and invoices listing asbestos-containing parts for its sales to the USS Seawolf and SM-1 facility. (*See* ECF Nos. 947-1; 947-3). Plaintiff also highlights the deposition of James Daugherty who worked at the Beaver Valley Power Station after Mr. Gay left. Mr. Daugherty recalled Buffalo pumps during his tenure at the Beaver Valley Power Station. (ECF No. 947-9, pp. 2–3). Mr. Daugherty could not recall many specifics relating to the Buffalo pumps at the Beaver Valley Power Station. (*Id.*).

**III.     Standard of Review**

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about

credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

IV. **Applicable Law**

A. **The Court Will Apply Pennsylvania Law.**

The parties agree that Pennsylvania substantive law applies although some of the alleged exposures occurred on a U.S. Navy submarine. Under traditional admiralty choice of law rules, a court may apply state law if it does not conflict with federal admiralty law. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622 (3d Cir. 1994); *see also Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1046–47 (3d Cir. 1988) (courts may substitute state law with maritime law when maritime law is silent or a local matter is at issue, but a court may not apply state law where it would conflict with maritime law); *Centennial Ins. Co. v. Lithotech Sales, LLC,* 29 F. App'x. 835, 836 (3d Cir. 2002) (maritime law displaces only inconsistent state law). For these reasons, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

In most instances, Pennsylvania law does not conflict with maritime law. That said, Defendant asserts a bare-metal defense for its products incorporated into the USS Seawolf. (ECF No. 977, p. 3). The bare-metal defense provides that if a manufacturer did not itself make, sell or distribute a part or incorporate a part into the product, the manufacturer is not liable for any harm caused by the integrated part, even if that part were necessary for the functioning of the product or if the manufacturer knew the incorporated part was dangerous. *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 993 (2019). The United States Supreme Court in *Air & Liquid Systems Corp. v. DeVries* held that the bare-metal defense is inapplicable in the maritime law context. *Id.* at 996. As a result, the Court need not reach the bare-metal defense in this context.

### B. Causation Standard

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's or decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that he inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

V.    ANALYSIS

Defendant moves for summary judgment because it is not liable for injuries caused by asbestos products for two reasons. First, it argues Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Air & Liquid. Second, it contends Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Air & Liquid on a regular, frequent or proximate basis.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod v. GAF Corp.*, 544 A.2d 50, 53 (Pa. Super. 1988); *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

### A. Plaintiff Identified No Air & Liquid Products Present at Mr. Gay's Worksites.

Plaintiff has not supplied evidence establishing that Mr. Gay worked around Defendant's products containing asbestos. Defendant admits that the record establishes that Defendant supplied some asbestos-containing products to five locations at which Mr. Gay worked during his career, but Plaintiff cannot show that Mr. Gay was exposed to any of those products. Plaintiff cites the deposition of a colleague who started work at the Beaver Valley Power Station after Mr. Gay left. (ECF No. 947-9, p. 2). Mr. Daugherty thought he recalled Buffalo pumps, but he was unable to recall specifically where the pumps were located and could only guess how they were used. (*Id.*). Showing that a product was present at a workplace does not establish that a plaintiff was exposed to that product. *See Eckenrod*, 544 A.2d at 52 ("[A] plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use.").

Plaintiff also argues asbestos-containing pumps were present on the USS Seawolf while Mr. Gay served aboard the submarine. The record Plaintiff cites is from the 1960s and 1970s, but Mr. Gay left the USS Seawolf in 1958. Defendant argues that the fact the U.S. Navy may have bought asbestos-containing products from Defendant does not prove Mr. Gay was exposed to asbestos from Defendant's product. (*Id.* at 7). As for Mr. Gay's work at the SM-1 nuclear power station in Ft. Belvoir, Virginia, Mr. Gay never identified Buffalo Pumps after naming several other manufacturers. (*Id.* at 8).

Plaintiff contends a portion of sales documents coincide with the time Mr. Gay worked at two sites: USS Seawolf and SM-1 nuclear facility. (*See* ECF No. 947, p. 2). Outside those correlations, Plaintiff cannot show where those items, if at all, were placed in the facilities. A "plaintiff must establish more than mere presence of asbestos in the workplace; he must prove that he worked in a vicinity in which a specific manufacturer's product was used." *Gutteridge*, 804

A.2d at 652. The Court holds that Plaintiff's evidence cannot establish Mr. Gay worked near asbestos-containing materials manufactured by Defendant.

### B. Plaintiff Failed to Show Air & Liquid's Products Contained Asbestos.

Even if Plaintiff established that Mr. Gay were exposed to Defendant's products, Plaintiff cannot show that those products contained asbestos. Plaintiff has failed to produce evidence to show that a Buffalo pump was present and installed on the USS Seawolf or at the SM-1 or Beaver Valley Power Station or that if present or installed that it contained asbestos. Plaintiff has not shown that Mr. Gay worked on a gasket or was exposed to a gasket or any other alleged asbestos-containing product that was original to a Buffalo pump. Nor has Plaintiff shown that Defendant required the use of asbestos-containing materials in its pumps at the locations during the time Mr. Gay was present. Plaintiff must establish that Mr. Gay's injuries were caused by an asbestos-containing product from a specific manufacturer or supplier. *Eckenrod*, 544 A.2d at 52. The Court holds that Plaintiff's evidence cannot establish that a Buffalo Pumps product contained asbestos.

### C. Plaintiff Failed to Establish Mr. Gay Was Exposed to Air & Liquid Pumps with Requisite Frequency, Regularity and Proximity.

Plaintiff has not shown that Mr. Gay was exposed to Buffalo Pumps with the necessary frequency, regularity and proximity. The Pennsylvania Supreme Court in *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 225 (Pa. 2007) adopted the reasoning of the Seventh Circuit in *Tragarz v. Keene Corp.*, 980 F.2d 411 (7th Cir. 1992). The Seventh Circuit held that the frequency, regularity and proximity of exposure criteria do not establish a rigid standard with an absolute threshold necessary to support liability. *Tragarz*, 980 F.2d at 420. Instead, a court should apply the criteria in an evaluative fashion to help distinguish cases in which a plaintiff can proffer evidence showing a sufficient likelihood that the defendant's product caused the harm, from a case in which such likelihood is not present because of casual or minimal exposure to the defendant's product. *Id.*

Plaintiff cites the testimony of James Daugherty to establish that Buffalo pumps were present at the Beaver Valley Power Station years after Mr. Gay left the facility. (*See* ECF No. 947, pp. 10–11). That testimony does not establish that Mr. Gay was exposed to a Buffalo pump, let alone one that contained asbestos.

Plaintiff offers the industrial hygiene report of Frank Parker, CIH and the report of Arnold Moore, PE to suggest Mr. Gay was exposed to asbestos fibers throughout his career. (*See id.* at 11–13). Neither report mentions Buffalo pumps.

Plaintiff cites the deposition of Buffalo Pumps corporate representative, Terrence Kenny, which shows that certain Buffalo pumps may have incorporated asbestos-containing components from the 1940s to 1980s. (*Id.* at 13). The report, though, provides no other specifics beyond generalizations that Buffalo Pumps created asbestos-containing products.

Defendant highlights that, ultimately, the record shows that it might have supplied some asbestos-containing products to certain locations that Mr. Gay worked during his career but does not show if these products were ever used or installed, where they were used, if any maintenance was performed on them or if Mr. Gay was present during this effort. (ECF No. 977, p. 10). Defendant argues that the facts taken in a light most favorable to Plaintiff show no more than the mere presence of Defendant's product at Mr. Gay's workplace—it goes no further to show that Mr. Gay was exposed to asbestos from a Buffalo Pumps product. (*Id.*).

A factfinder could not find for Plaintiff without making several inferential leaps. *See Liberty Lobby*, 477 U.S. at 248. For these reasons, the Court finds Plaintiff has not proffered enough evidence to show Air & Liquid's pumps were a substantial factor in Mr. Gay's mesothelioma.

## VI.  Conclusion

The Court finds that a genuine issue of material fact does not exist in this case. As a result, Defendant's Motion for Summary Judgment is granted. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4/26/21
Dated