IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>*Plaintiff*,<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Yuba Heat Transfer, LLC ("Defendant") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Yuba's Motion for Summary Judgment. (ECF No. 848). The Court must determine whether Plaintiff has properly identified Yuba's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Yuba's Motion is granted.

**I.     Background**

This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive

1

work starting in the 1940s. (*See* ECF Nos. 1-1; 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (ECF No. 1-15, ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II.     Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products while working at the Niagara Mohawk Power Station (Nine Mile Point) from 1977 to 1981. More specifically, Plaintiff argues Mr. Gay was exposed to asbestos from Yuba's feedwater heaters, which caused his mesothelioma. (ECF No. 937, p. 10).

Mr. Gay worked full-time at the Nine Mile power station during its initial construction, from 1977 until 1981. (ECF No. 937-1, ¶ 28). Throughout Mr. Gay's tenure, the defendant furnished high-pressure and low-pressure feedwater heaters for use at the plant. (ECF No. 937-4, p. 2). These heaters were large, tank-like structures and included attachment points for plant piping, access hatches, inspection portholes and valves.

Mr. Gay did not identify Yuba by name or feedwater heaters. Mr. Gay testified that he inspected the piping systems for the nuclear reactor and pressure systems throughout the Nine Mile plant. (ECF No. 937-1). He worked near the construction workers who installed various pieces of equipment. (ECF No. 937-2, pp. 4–5).

Yuba's documents show that the equipment that it furnished to Mr. Gay's worksite required the use of asbestos-containing gaskets. The blueprints called for the use of asbestos gaskets on the

equipment. Yuba's documents show that the equipment was intended to be assembled at the site following the blueprints. (ECF No. 937-5).

Plaintiff's expert report from an engineer showed that gaskets and packing contained asbestos until the 1980s, and another report from an industrial hygienist attested that the normal use and handling of asbestos-containing packing and gasket materials release airborne fibers. (ECF Nos. 937-7, 937-8).

### III. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### IV. Applicable Law

**A. Pennsylvania Law Applies**

The parties agree that Pennsylvania substantive law applies. For that reason, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

### B. Causation Standard

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

V.   ANALYSIS

Defendant moves for summary judgment arguing that it is not liable for injuries caused by asbestos products for two reasons. First, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Yuba. Second, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Yuba on a regular, frequent or proximate basis.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fibers came from defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

Yuba admitted in response to Plaintiff's discovery requests that it supplied feedwater heaters to the Nine Mile Point Power Station in 1973, 1980 and 1982. (ECF No. 937-4, p. 2).

5

Yuba also produced the accompanying drawings, setting plans and bills of material for these equipment items. Yuba does not dispute that asbestos-containing gaskets were used in the build of these feedwater heaters.

Yuba disputes Plaintiff's argument that, simply because it supplied feedwater heaters to the Nine Mile Point Power Station while Mr. Gay worked there, he was exposed to asbestos fibers from the water heaters. In his deposition, Mr. Gay never mentioned water heaters and never named Yuba. Plaintiff has not supplied testimony or any other evidence to suggest that Yuba feedwater heaters were installed, removed, repaired or replaced in a way that caused asbestos fibers to be released in the presence of Mr. Gay.

Mr. Gay testified that he was present at the job from 1977 to 1981 as an assistant superintendent, and later superintendent, of field quality control on the structural and electrical side. (ECF No. 849-1, pp. 2–5). Mr. Gay attested that pressure vessels, piping and electrical items were installed while he was at the facility. (*Id.* at 2). Mr. Gay observed and inspected the welding work on the rebar, the installation of pipe insulation and the pulling of electrical cables. (*Id.* at 8–10). He also inspected and took alignments for pump shafts. (*Id.* at 10–11). He testified to exposure to asbestos-containing insulation, welding blankets and gaskets on pipe flanges during hydrostatic testing. (*Id.* at 11–14).

On the other hand, Mr. Gay conceded that he had few opportunities for exposure to asbestos-containing gaskets because of the new construction. (*Id.* at 12). For the gaskets, Mr. Gay testified that some had to be removed when a valve or pump failed. (ECF No. 849-2, p. 7). He could not identify any products at Nine Mile Power Station that he believed contained asbestos, beyond the insulation, welding blankets and gaskets. (*Id.*).

Plaintiff argues that (1) Mr. Gay was near piping systems, high-pressure systems and various pieces of equipment during his time at the Nine Mile plant; (2) he was near construction workers who installed equipment and worked on gaskets associated with that kind of equipment; and (3) he was all over the job site. However, Plaintiff's argument lacks any specificity. The Court agrees with Yuba's analysis. A plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos*, 222 A.3d at 399. Plaintiff cannot establish that Mr. Gay was exposed to the alleged asbestos with regularity, frequency or proximity. Mr. Gay never testified to being near Yuba's products and never stated he was near construction workers assembling the Yuba products. Ultimately, Plaintiff failed to proffer enough evidence to show that Mr. Gay was exposed to any asbestos from a Yuba product.

A factfinder could not find for Plaintiff without making several inferential leaps. *See Liberty Lobby*, 477 U.S. at 248. The Court finds Plaintiff failed to proffer enough evidence to show that asbestos from a Yuba product was a factor in Mr. Gay's mesothelioma.

## VI. Conclusion

The Court finds that no genuine issue of material fact exists in this case. As a result, Defendant's Motion for Summary Judgment is granted. Orders of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6-17-21
Dated