IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>                   *Plaintiff,*<br><br>    v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>                  *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant ViacomCBS Inc., f/k/a CBS Corp., a Delaware Corp., f/k/a Viacom, Inc., successor by merger to CBS Corp., a Pennsylvania Corp., f/k/a Westinghouse Electric Co. ("Westinghouse") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania. Plaintiff alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Westinghouse's Motion for Summary Judgment. (ECF No. 874). The Court must determine whether Plaintiff has properly identified Westinghouse's products as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Westinghouse's Motion is denied.

1

I. Background

This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive work starting in the 1940s. (*See* ECF Nos. 1-1; 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (ECF No. 1-15, ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

II. Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products while working at the PM-1 nuclear power plant at the Sundance Air Force Station in Sundance, Wyoming and the Beaver Valley Power Station in Shippingport, Pennsylvania. (ECF No. 962). Plaintiff alleges Mr. Gay was exposed to asbestos products used with Defendant's turbines and condensers. (*Id.*).

The PM-1 in Sundance, Wyoming was a small nuclear power plant. Mr. Gay was stationed there and worked in maintenance and operations from 1961 to 1964. Westinghouse manufactured and furnished steam generators, turbine-generators, condensers and switch gears for the PM-1 plant. Westinghouse also furnished spare parts for the equipment. (ECF No. 872-1, p. 2). Mr. Gay recalled the Westinghouse equipment at the PM-1 facility and that the turbines were covered with heat insulation. Records established that much of this equipment contained asbestos to

2

varying degrees. (*Id.*). Mr. Gay testified that he handled and installed the asbestos-containing gaskets and packing. (ECF No. 962-2, ¶ 20). He also worked around others who handled and installed gaskets, packing and heat insulation, which created dust that he breathed. (*Id.*).

After the construction of the PM-1 facility, Mr. Gay spent about three years working as an operator and maintenance worker at the facility. Mr. Gay's maintenance desk was located a few feet from the Westinghouse turbine and the Westinghouse switchgear. (ECF No. 962-5, p. 2).

In an unrelated deposition, Raymond McMullen testified as a corporate representative of Westinghouse. (ECF No. 962-6). He explained that all Westinghouse switchgears included asbestos-coated wires, regardless of the voltage. (*Id.* at 5).

Westinghouse records showed that its turbine at the PM-1 facility was insulated with asbestos-containing blankets, block insulation and insulating cement, and its associated valves used packing and gaskets. Job specifications produced by Westinghouse showed that Westinghouse directed that the blankets used for the steam turbines contain asbestos. Westinghouse documents also included specifications for the "Manufacture of blankets for steam turbines . . . ." (ECF No. 985-7, p. 2).

Later in his career, Mr. Gay worked at the Beaver Valley Power Station during its construction in the 1970s. He was employed by the engineering firm that also built the site, and he ensured that the various contracting companies complied with all job specifications. He stated that he was in every area of the plant to inspect pumps, valves, equipment and pipe systems as part of his regular duties. (ECF No. 962-2, ¶ 22). Mr. Gay testified that he was not in the area when the turbine was insulated but recalled various Westinghouse employees working at the site. (ECF No. 962-1, p. 11). Westinghouse built the reactor, and documents showed that Westinghouse was responsible for the turbine, generator, ancillary piping, pumps and valves. (ECF No. 962-9, pp. 2–

3

78). Westinghouse documents also showed that certain gaskets and turbine cement specified the use of asbestos-containing materials during the time Mr. Gay worked at the site. (*Id.* at 79, 80). The turbine arrived on site in 1971 but was not brought online until May 1975, shortly before Mr. Gay left the Beaver Valley site.

### III. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### IV. Applicable Law

#### A. Pennsylvania Law Applies

The parties agree that Pennsylvania substantive law applies. For that reason, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

#### B. Causation Standard

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product

4

manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

## V.     ANALYSIS

Defendant moves for summary judgment because it alleges Plaintiff failed to establish that Mr. Gay was exposed to any asbestos-containing products of Westinghouse. "At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the

product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

Plaintiff has submitted evidence to show that the various materials Mr. Gay encountered contained asbestos. Based on the current state of the record, the Court cannot ascertain sufficient frequency, regularity and proximity. Summary judgment is inappropriate for now. Defendant's Motion for Summary Judgment is denied.

## VI. Conclusion

The Court finds that a genuine issue of material fact exists, which precludes summary judgment. As a result, Defendant's Motion for Summary Judgment is denied. An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6-17-21
Dated