IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>                   *Plaintiff*,<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>                  *Defendants*. | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant General Electric Co. ("GE") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to GE's asbestos-containing products. On October 11, 2019, GE filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is GE's Motion for Summary Judgment. (ECF No. 903). The Court must determine whether Plaintiff has properly identified GE's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, GE's Motion is granted.

**I.    Background**

This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive

1

work starting in the 1940s. (*See* ECF Nos. 1-1; 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (ECF No. 1-15, ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II.    Relevant Facts

Plaintiff alleges Mr. Gay developed mesothelioma from exposure to GE's asbestos-containing products while working at PM-1 nuclear facility in Sundance, Wyoming; the SM-1 Power Station in Ft. Belvoir, Virginia; and the Beaver Valley Power Station in Shippingport, Pennsylvania.

Mr. Gay testified that he worked at the SM-1 nuclear facility in Ft. Belvoir, Virginia from 1958 until 1961 and again from 1964 to 1967. (ECF No. 997-2, p. 2). The SM-1 was a small nuclear power generating station that was part of a pilot program to determine the feasibility of building nuclear power plants in remote locations. (*Id.*). When Mr. Gay arrived at the SM-1, the facility was fully operational. (*Id.*). He began work as a reactor operator and became a maintenance supervisor. (*Id.*). His duties required him to perform maintenance at the SM-1 facility using gaskets and packing on various pieces of equipment, including pumps and valves. (*Id.* at 2–3). After he became maintenance supervisor, he assisted others with hands-on maintenance work. (*Id.* at 4).

### A. Electrical Panel Boards and Switchgear

Plaintiff claims Mr. Gay was exposed to asbestos from GE panelboards and switchgear at three locations including the PM-1 electrical generating station in Sundance, Wyoming; the SM-1 Power Station in Ft. Belvoir, Virginia; and at the Beaver Valley Power Station while working for Stone and Webster.

Mr. Gay believed that GE breakers, switches and control panels were in place at the PM-1 station. (ECF No. 906-4, p. 2). He did not work with this equipment but stated that electricians performed routine maintenance on this equipment two or three times during the three years he was present there. (*Id.*). Mr. Gay observed others racking in and racking out metal-clad cabinets. (ECF No. 906-5, p. 4).

Mr. Gay believed he was exposed to asbestos at the SM-1 station when electricians cleaned out switchgears. (*Id.* at 3). Mr. Gay stated that the electricians opened and closed electrical boxes and checked carbon contacts. (*Id.* at 3, 4). He was not involved with this work. (*Id.* at 4). Mr. Gay worked near others who used compressed air to blow dust out of electrical control panels at the SM-1 facility. (ECF 997-2, p. 6). He testified that ALCO, the company that built the facility, and the U.S. Army published a maintenance manual that he consulted in the performance of his job. (*Id.* at 8). He testified that various pieces of equipment at the plant were disassembled periodically for demonstrative purposes because the plant was an educational facility. (ECF No. 997-1, p. 3). Routine maintenance was common while he worked at the plant. (*Id.*).

Mr. Gay worked at the Beaver Valley Power Station from 1974 through the beginning of 1976 as that plant was under construction. (ECF No. 906-4, p. 3). Mr. Gay claimed that GE switchgear was present at the power station, but he did not observe others working on GE switchgear while he was there. (ECF Nos. 906-4, p. 3; 906-5, pp. 5–6). Mr. Gay believed he may

3

have flipped a switch on a break but did not believe that these actions exposed him to asbestos. (*Id.* at 6).

### B. Turbines

Mr. Gay testified about a GE turbine that he identified at the SM-1 Power station where he was stationed while in the U.S. Air Force. GE made the turbine at the facility. (ECF No. 997-2, p. 5). He believed that insulation had been applied to the turbine by the time he arrived there. (ECF No. 906-2, pp. 26–27). He did not see others remove the insulation on the turbine. (*Id.*). He was not involved in the removal of insulation from the turbine and he never observed the turbine being opened. (ECF No. 906-5, pp. 2–3). Part of the maintenance he performed at the SM-1 facility included one instance in which he removed a steam control valve from the turbine. (*Id.*). As part of the maintenance, Mr. Gay disconnected the flanges and the oil line and removed the valve with a large crane. (ECF No. 954-2, p. 5). This work did not disturb any insulation on the turbine. (*Id.*). Mr. Gay believed that the valve was a component of the turbine but was not sure. (*Id.* at 6). He did not know who manufactured the valve. (*Id.*).

### III. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about

credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

IV. **Applicable Law**

A. **Pennsylvania Law Applies**

The parties agree that Pennsylvania substantive law applies. For that reason, the Court will apply Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

B. **Causation Standard**

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

5

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

V. **ANALYSIS**

GE moves for summary judgment on the grounds that it is not liable for injuries caused by asbestos products for two reasons. First, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by GE. Second, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by GE on a regular, frequent or proximate basis.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat GE's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by GE. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from

defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

### A. Evidentiary Issues

GE opposes various pieces of evidence that Plaintiff offered. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Third Circuit held in the context of submitting sham affidavits:

> It is use of the term "genuine issue," rather than any issue of fact, that implicitly demonstrates the necessity of the sham affidavit doctrine as a means of sorting the wheat from the chaff. In explaining its use of the term "genuine issue" of fact, the *Liberty Lobby* Court buttressed the trial judge's role in sorting the genuine from the fallacious: "There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3rd Cir. 2007). Lawyer assertions contrary to the evidence or without the support of any admissible evidence are not genuine issues sufficient to oppose summary judgment.

GE argues that because Mr. Gay's affidavit contradicts his sworn testimony, it constitutes a sham affidavit and should not be considered. *Jiminez*, 503 F.3d at 253. Plaintiff later removed Mr. Gay's affidavits from its record. Because of the inconsistencies and because Plaintiff no longer relies on its contents, the Court will not consider Mr. Gay's affidavit.

GE also challenges a Google Books document. The document does not mention disturbing asbestos during the maintenance procedures at the SM-1 facility. Without mention of asbestos, the document does not create a genuine issue of material fact. *See Willis v. UPMC Children's*

*Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Plaintiff did not provide a foundation for the document. It lacks authentication, lacks relevance and constitutes hearsay. While an unauthenticated document may be used to oppose a motion for summary judgment, the document must be "reducible to admissible evidence." *Horton v. Nicholson*, 435 F. Supp. 2d 429 (E.D. Pa. 2006) (citing *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458 (3d. 1990)). Because the document lacks foundation or authentication, the Court will not consider it in adjudicating this motion.

### B. Plaintiff Failed to Show Mr. Gay Was Exposed to Asbestos from GE Products with Requisite Frequency, Regularity and Proximity.

GE argues Plaintiff lacks the proper evidence to avoid summary judgment and proceed to trial. The Court will consider each alleged exposure.

#### 1. SM-1 Facility

GE argues Mr. Gay's only work relating to the GE turbine at the SM-1 facility included removing insulation from a steam valve control. He did not know if the valve was part of the turbine or even if GE manufactured it. In support of her contention that the steam control valve was a component of the turbine, Plaintiff attached Exhibit 3, "Army Package Power Reactor Appr-1 Operating Manual and Inspection Service Manual" for Alco Products, Inc. (ECF No. 954-3). GE argues that nothing in the manual proves that the steam control valve was a component of the turbine or that the document even applied to the SM-1 facility. Plaintiff offered no affidavit and no other authentication or foundation for the document. Plaintiff's evidence fails to show that GE created the valve and that Mr. Gay was exposed to asbestos from this project with frequency or regularity.

Considering the GE turbine, Mr. Gay testified that he never removed insulation from the turbine and never observed the turbine with its shell removed. (ECF No. 981-1, pp. 2–3). Mr. Gay also testified about the various switchgear at the SM-1 facility that he believed GE manufactured. He never observed the installation of switchgear but claimed that electricians opened and closed metal-clad switchgear boxes. The only thing he knew the electricians were doing was checking metal or carbon contacts. (*Id.* at 3–4). Plaintiff contends that regular maintenance occurred at the SM-1 facility, which shows that Mr. Gay was likely exposed to asbestos dust. Mr. Gay testified that he supervised workers who calibrated, cleaned and blew dust over the instrument panels. (ECF No. 954-2, p. 6). He did not associate GE with the instrumentation panels. (*Id.*). Plaintiff must not only prove that dust contained asbestos but must also tie that dust to a specific product. Plaintiff did not do that here.

## 2. PM-1 Nuclear Facility

Plaintiff contends that Mr. Gay was exposed to asbestos from electrical control panels that contained arc shields and controllers at the PM-1 facility. He observed electricians working on electrical contactors, racking in and racking out of switchgear and the installation of switchgear. In his deposition, Mr. Gay answered questions about his time at the PM-1 nuclear power station. When asked about the other workers there, he testified that the only work he could recall was that electricians racked in and racked out metal-clad switchgear. (ECF No. 981-1, p. 4). He did not perform routine maintenance on the equipment. (*Id.* at 5). He recalled others maintaining the equipment, including blowing dust, but he did not think that occurred more than two or three times while he was there. (ECF No. 954-1, p. 5). Plaintiff's evidence that he was exposed to asbestos-containing products from GE at the PM-1 facility fall short. She did not prove that Mr. Gay was exposed to dust from a GE product with sufficient regularity or frequency. Citing general

9

maintenance cannot show that Mr. Gay's mesothelioma was caused by asbestos from a GE product.

### 3. Beaver Valley Power Station

Mr. Gay testified about switchgear located at the Beaver Valley Power Station. He did not recall any work done on switchgear there. (ECF No. 981-1, pp. 5–6). Mr. Gay testified that he may have flipped a switch (also called "closing a breaker") on a control panel. (*Id.* at 6). He also testified that he was around workers who handled the wiring and installation of motors at the plant. (ECF No. 954-1, pp. 6–7). He testified to being near contract employees insulating switch gears and pulling cables through conductors. (*Id.*)

GE also contends Plaintiff's testimony of James Daugherty lacks relevance. Although Mr. Gay's and Mr. Daugherty's time overlapped, Mr. Daugherty was not in the same locations at issue until two years after Mr. Gay left. Mr. Daugherty did not testify being near GE products until 1978, two years after Mr. Gay departed from the power station. (ECF No. 981-2, pp. 4–5).

Plaintiff failed to provide enough evidence that the GE products at the Beaver Valley Power Station contained asbestos. Thus, Plaintiff cannot show that Mr. Gay's mesothelioma was caused by GE.

### 4. GE's Answers to Interrogatories

Plaintiff supplied GE's answer to interrogatories. (ECF No. 954-13). The documents provide that "some of GE's switchgear may have contained certain components, including arc chutes and circuit breakers, which upon information and belief, depending on the time, the particular specifications, uses, applications, and customer requirements, may have contained some quantity of encapsulated chrysotile [i.e., asbestos]." (*Id.* at 10). GE's answers for control panels were similar. GE argues that these interrogatories do not establish that the switchgear and control

panels Mr. Gay encountered during his career contained asbestos. And GE states the evidence does not show Mr. Gay was exposed with sufficient frequency, duration and proximity to cause the disease. (ECF No. 981, p. 7).

The Court agrees with GE. Plaintiff's evidence does not show that the products Mr. Gay identified contained asbestos. *Krauss*, 104 A.3d at 574–75, 578 (holding manufacturers' answers to interrogatories that some products may have contained asbestos did not create a genuine issue of fact). Plaintiff has only shown that Mr. Gay was around GE products generally. He did not work on these products and could not recall how often others worked on these products.

### VI. Conclusion

The Court finds no genuine issue of material fact exists. Plaintiff did not show that Mr. Gay's mesothelioma was caused by GE products and that he was exposed to asbestos from those products with sufficient frequency, regularity or proximity. The Court grants GE's Summary Judgment. As a result, GE's Motion for Partial Summary Judgment is granted. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6-17-21
Dated

11