IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>   *Plaintiff,*<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>   *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant General Electric Co. ("GE") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to GE's asbestos-containing products. On October 11, 2019, GE filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is GE's Motion for Summary Judgment. (ECF No. 916). The Court must determine whether Plaintiff has properly identified GE's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, GE's Motion is denied.

**I. Background**

This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the U.S. Navy from 1946 to 1958, the U.S. Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive work starting

1

in the 1940s. (*See* ECF Nos. 1-1, 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (*Id.* ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (*Id.* ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II. Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to GE's asbestos-containing products while working on vessels operated by the U.S. Navy. Plaintiff alleges Mr. Gay was exposed to asbestos products aboard the USS Blower, USS Blackfin, USS Guitarro and USS Seawolf. GE manufactured motors, generators and turbines used aboard these submarines.

Decedent served in the U.S. Navy from 1946–58 and was a submarine engineman. (ECF No. 916-2, p. 2). He served on several diesel-powered submarines including the USS Blower, USS Blackfin and the USS Guitarro. (*Id.*). Later, he transitioned to nuclear submarines and served aboard a nuclear submarine known as the USS Seawolf. (*Id.* at 22, 25).

### A. Motors

Plaintiff claims Mr. Gay was exposed to asbestos from GE motors on the USS Blower. Mr. Gay explained that the motors drove the pumps on the ship. (*Id.* at 10). Mr. Gay never worked on motors but claimed he was near electricians who worked on them. (*Id.*). He testified that electricians used compressed air to blow the dust off the motors. (*Id.* at 11). Mr. Gay testified that he disregarded what the electricians did. (ECF No. 916-4, p. 4). He admitted that motors did not use thermal insulation such as asbestos in their construction. *Id.*

## B. Generators

Plaintiff claims Mr. Gay was exposed to asbestos from GE generators present on the ships on which he served including the USS Blower, the USS Blackfin and the USS Guitarro. On the USS Blower, Mr. Gay observed electricians working on generators and sometimes assisted them in their duties. (ECF No. 953-4, p. 4). He never saw them open a generator and take it apart. (ECF Nos. 916-2, p. 13; 916-4, p. 5). When the ship was in port, Mr. Gay spent his shiftwork aboard the USS Blower and near other workers. (ECF No. 953-4, pp. 2, 4–5). Mr. Gay testified that there were four GE generators on the USS Blackfin. He testified that he was around electricians who worked on generators. (ECF No. 916-2, pp. 21–22). He did not see workers dismantling or working on the USS Blackfin generators. (ECF No. 916-4, p. 5). Mr. Gay identified GE generators on the USS Guitarro but testified that he did not recall any maintenance work on its generators. (ECF Nos. 916-2, p. 22; 916-4, p. 6).

## C. Turbines

Mr. Gay served on the USS Seawolf, a nuclear submarine in the Navy, which was constructed based on a prototype that GE developed for the Navy. Mr. Gay testified that when he arrived on the USS Seawolf, the GE turbine had already been insulated. (ECF No. 916-2, p. 24). Mr. Gay's duties included monitoring systems while at sea to ensure they were operational. (ECF No. 916-2, p. 26). He was not involved in maintenance on the USS Seawolf. (*Id.*; ECF No. 916-4, p. 6). Mr. Gay was never present during any overhauls of the submarine in port. (ECF No. 916-4, p. 26).

## D. GE and Asbestos

Plaintiff provided two pieces of evidence to show that GE's products contained asbestos. One of several GE documents that show GE sold asbestos-containing products and that asbestos

3

content was often the default for certain products. The letters address GE products for land-based uses and not for submarines. (ECF No. 996-6).

GE answered interrogatories that it manufactured and sold asbestos-containing turbines, generators, motors and electrical controls. GE shipped marine turbines for use aboard the USS Seawolf. (ECF No. 996-7, pp. 2–11).

### III. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### IV. Applicable Law

#### A. Maritime Law Applies

The U.S. Constitution authorizes federal courts to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Relatedly, "Congress has embodied that power in a statute," *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995), conferring district courts with original jurisdiction over "[a]ny civil case of admiralty or

maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

A party seeking to invoke maritime jurisdiction under § 1333 in an asbestos-related claim must satisfy both a locality and a connection test. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 458–59 (E.D. Pa. 2011) ("*Conner I*"). The locality test "is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id.* at 466. The connection test is met if (1) the exposure "had a potentially disruptive impact on maritime commerce" and (2) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* at 463 (citation omitted).

As to the first prong of the connection test, the court in *Conner I*, 799 F. Supp. 2d at 463, held that alleged asbestos exposure has a potentially disruptive effect on maritime commerce where that exposure affects a sailor whose job it is to maintain equipment integral to the functioning of the vessel on which the sailor served. In that situation, exposure to a defective product could "potentially slow or frustrate the work being done on the vessel." *Id.* at 465 (quoting *John Crane, Inc. v. Jones*, 650 S.E.2d 851, 854 (Va. 2007)). Turning to the second prong, the court in *Conner I* found that an allegedly defective product has a substantial relationship to traditional maritime activity where the product at issue is essential for the proper functioning of the vessel. The court held that the defendant's manufacturing of the allegedly defective product is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply to the suit at hand." *Id.* at 469.

Both the locality test and the connection test are met here. Gay's alleged asbestos exposure occurred on U.S. naval vessels on navigable waters. The exposure had potentially disruptive effects on maritime commerce. GE manufactured products critical for the functioning of the

5

vessel. These circumstances create a substantial relationship to traditional maritime activity. *See id.* Because both tests are met, maritime law governs in this case.

**B. Causation Standard**

To establish causation in a claim for asbestos-related personal injuries under maritime law, a plaintiff must show that (1) the plaintiff was exposed to the defendant's product, and (2) that the product was a substantial factor[1] in causing the plaintiff's injury. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). "In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376).

Minimal exposure to a defendant's product does not establish causation. Likewise, establishing that a defendant's product was merely present at a plaintiff's place of work is insufficient. *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). Instead, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). A "[t]otal failure to show that the defect

---

[1] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement specify that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (Am. L. Inst. 1965).

6

caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark*, 21 F. App'x at 376 (citations omitted).

Under maritime law, a defendant may not assert the bare-metal defense. In *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019), the U.S. Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." The Supreme Court held that a product manufacturer must warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995–96.

## V. ANALYSIS

GE moves for summary judgment arguing that it is not liable for injuries caused by asbestos products for two reasons. First, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by GE. Second, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by GE on a regular, frequent or proximate basis.

To succeed on either a negligence or a strict liability theory under maritime law in a products liability case, a plaintiff must establish causation. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). To do so, a plaintiff must show: "(1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012).

A plaintiff may prove that a defendant's product was a substantial factor using either direct evidence or "circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Abbay v. Armstrong Int'l, Inc.*, Civ. A. No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012). A demonstration of "minimal exposure" to a defendant's product is not sufficient. *Id.* Rather, the plaintiff must show "substantial exposure" to allow a reasonable inference—based on more than conjecture—that the defendant's product was a substantial factor in causing the plaintiff's injury. *Lindstrom*, 424 F.3d at 492. "[T]he question of 'substantiality' is one of degree normally best left to the fact-finder." *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995)).

### A. Evidentiary Issues

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Third Circuit held in the context of submitting sham affidavits:

> It is use of the term "genuine issue," rather than any issue of fact, that implicitly demonstrates the necessity of the sham affidavit doctrine as a means of sorting the wheat from the chaff. In explaining its use of the term "genuine issue" of fact, the *Liberty Lobby* Court buttressed the trial judge's role in sorting the genuine from the fallacious: "There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3rd Cir. 2007). Lawyer assertions contrary to the evidence or without the support of any admissible evidence are not genuine issues sufficient to oppose summary judgment.

8

GE argues that because Mr. Gay's affidavit contradicts his sworn testimony, it constitutes a sham affidavit and should not be considered. *Jiminez*, 503 F.3d at 253. Plaintiff later removed Mr. Gay's affidavits from its record. Because of the inconsistencies, the Court will not consider Mr. Gay's affidavit.

GE also challenges some of Plaintiff's proffered evidence, including GE's Technical Information Letter, the Naval Architecture Expert Report of Arnold Moore, P.E. and the Expert Industrial Hygienist Report. GE argues that the documents are either irrelevant or lack the necessary foundation or authenticity and constitute hearsay. The Court finds that these documents are irrelevant, which is also explained below.

### B. Plaintiff Failed to Show Mr. Gay Was Exposed to Asbestos from GE Products with Requisite Frequency, Regularity and Proximity.

Plaintiff argues that most of Mr. Gay's time aboard the various submarines was either at sea or in port for repairs. The submarines were enclosed, and he either did mechanical work or was near other submariners who did the same work. His job was dusty and many products he and others handled contained asbestos. Each of the submarines had multiple pieces of General Electric equipment aboard in the mechanical spaces where Mr. Gay spent his time. Plaintiff thus contends that Mr. Gay was exposed to asbestos from products manufactured by GE.

GE disagrees. Although GE equipment was aboard these ships, Mr. Gay never cited a specific instance when he could recall working with an asbestos-containing GE product or when others worked on GE equipment. Mr. Gay's deposition spoke generally of maintenance work. Plaintiff must present more than a probability to show Mr. Gay was exposed to asbestos from GE's products and that it caused his mesothelioma.

As for the USS Blower, Mr. Gay testified that he never worked on the motors. He testified that he was around electricians who blew dust but that the equipment did not have asbestos. Mr.

9

Gay also testified that he did not do maintenance work on the generators of the USS Blower but that he at times assisted the electricians. That work never required the generators to be taken apart. As for the USS Blackfin and USS Guitarro, Mr. Gay testified that he never saw electricians dismantling generators on the Blackfin and did not recall any specific maintenance of the generators of the Guitarro. As for the USS Seawolf, he testified that the GE turbine had been insulated before he arrived and that he merely monitored the equipment while out at sea. He did not perform maintenance on the USS Seawolf and was not present for any overhauls.

Minimal exposure to a defendant's product does not establish causation. Showing that asbestos-containing products were aboard the ships on which Mr. Gay served does not prove asbestos from those products caused Mr. Gay's disease. *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). Plaintiff needed to show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). Plaintiff has failed to do so. For these reasons, the Court grants GE's Motion for Summary Judgment.

### VI. Conclusion

The Court finds that no genuine issue of material fact exists. As a result, GE's Motion for Summary Judgment is denied. An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6·17·21
Dated