IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY,<br><br>     *Plaintiff,*<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>     *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff Allisa D. Gay ("Plaintiff") sued Defendant Viking Pump, Inc. ("Defendant") and various manufacturers and distributors on October 8, 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania and alleged that Decedent Carl E. Gay ("Decedent") developed mesothelioma from exposure to Defendant's asbestos-containing products. On October 11, 2019, Defendant General Electric Co. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1446. Before the Court is Viking Pump's Motion for Summary Judgment. (ECF No. 917). The Court must determine whether Plaintiff has properly identified Viking Pump's product as a cause of Mr. Gay's disease and, ultimately, death. For the following reasons, Viking Pump's Motion is granted.

**I. Background**

  This case involves an alleged asbestos-related injury because of Mr. Gay's employment in the United States Navy from 1946 to 1958, the United States Air Force from 1958 to 1967, General Electric Co. from 1967 to 1974, Stone and Webster from 1974 to 1989 and from his automotive

1

work starting in the 1940s. (*See* ECF Nos. 1-1; 1-2). Mr. Gay was diagnosed with mesothelioma in June 2019. (ECF No. 1-15, ¶ 165; ECF No. 675).

Mr. Gay was deposed over nine days—November 5–7, 11–13, 21–22, 25, 2019—and identified various manufacturers, suppliers and users of asbestos products. Mr. Gay died on April 12, 2020. (ECF No. 1-15, ¶ 165; ECF No. 675). His daughter, Allisa D. Gay, was named executor of her father's estate and filed an Amended Complaint on August 13, 2020. (ECF No. 692). Allisa Gay was substituted as Plaintiff. (*Id.*).

## II. Relevant Facts

Plaintiff alleges that Mr. Gay developed mesothelioma from exposure to Defendant's asbestos-containing products while serving aboard the USS Blower and USS Blackfin and while working at the SM-1 facility in Ft. Belvoir, Virginia. Plaintiff believes Mr. Gay was exposed to asbestos products used with Viking pumps.

While serving as an engineman in the U.S. Navy, Mr. Gay worked with various pieces of equipment including engines, pumps, valves, fans, blowers, steam traps and pipe systems. (ECF No. 939-1, ¶ 13). He worked closely with others who also worked on this equipment. (*Id.*). Mr. Gay handled and installed gaskets and packing. (*Id.*). At times, he would need to cut the gaskets to fit the application. (*Id.*). Other times, Mr. Gay would work with precut materials. (*Id.*). Mr. Gay testified that he had a general recollection of Viking pumps and being around others who also worked on those pumps. (ECF No. 918-1, p. 14–15).

Defendant acknowledges that it sold Viking Pumps to the U.S. Navy according to government contracts. (ECF No. 918, p. 2). Viking documents and drawings show that the U.S. Navy approved Viking Pumps for the USS Blower, USS Blackfin and SM-1 facility. (ECF No. 918-2).

Between 1946 and 1947, Mr. Gay served as an engineman aboard the USS Blower. (ECF No. 939-1, ¶ 5). The engine room contained various pieces of equipment including pumps, valves, air handlers, a distiller, motors, blowers, heat exchangers, generators, engines, insulation, water purification systems and electrical control panels. (*Id.*). He worked on some of this equipment and was near others who also worked on the engine room's equipment. (*Id.*). Mr. Gay recalled that a Viking pump was present aboard the USS Blower but could not specify where it was located or what its function was. (ECF No. 918-1, p. 21). He did not recall the pump being removed from the line or breaking down during his service. (*Id.* at 22–24). He did not remember others working on the pump. (*Id.* at 23–24).

From 1950 to 1953, Mr. Gay served as an engineman aboard the USS Blackfin. (ECF No. 939-1, ¶ 7). The USS Blackfin had equipment like that of the USS Blower. (*Id.*). He worked on some of this equipment and was near others who also worked on the equipment. (*Id.*). In 1950, Mr. Gay was present at Mare Island during the recommissioning of the USS Blackfin and observed shipyard workers performing maintenance and rebuilding the ship. (ECF No. 918-1, p. 9–12). Later, Mr. Gay served aboard the ship while it was out to sea. Mr. Gay performed little to no maintenance while the submarine was out to sea. (*Id.* at 15). He, again, recalled Viking but could not recall where or how it was used aboard the USS Blackfin. (*Id.* at 24–26).

Mr. Gay left the U.S. Navy and spent nine years serving in the U.S. Air Force. The U.S. Air Force assigned Mr. Gay to the SM-1 facility in Ft. Belvoir, Virginia from 1958 until 1961 and then again in 1964 until 1967. (ECF No. 918-1, p. 17). Between 1958 and 1961 Mr. Gay worked on pumps by packing and taking them apart. (*Id.* at 19). He recalled a single, small horizontal Viking pump used to pump water. (*Id.* at 26). He did not recall other workers removing the Viking pump from its line. (ECF No. 939-5, p. 4). He guessed that each pump would have been

3

overhauled at some point, but he also testified that this work did not occur often. (*Id.*). He did not believe that Viking manufactured the gaskets or packing. (*Id.*).

**III.    Standard of Review**

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

**IV.    Applicable Law**

**A. Pennsylvania Law Apply**

The parties agree that Pennsylvania substantive law applies although some of the alleged exposures occurred on a U.S. Navy submarine. Under traditional admiralty choice of law rules, a court may apply state law if it does not conflict with federal admiralty law. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622 (3d Cir. 1994); *see also Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1046–47 (3d Cir. 1988) (courts may substitute state law with maritime law when maritime law is silent or a local matter is at issue, but a court may not apply state law where it would conflict with maritime law); *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 F. App'x. 835, 836 (3d Cir. 2002) (maritime law displaces only inconsistent state law). For these reasons, the Court will apply

Pennsylvania law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guar. Trust Co. v. York*, 326 U.S. 99, 108 (1945).

**B. Causation Standard**

Before imposing liability on a defendant in a product liability action, Pennsylvania law requires a plaintiff to show not only that the plaintiff was exposed to a defective product manufactured or sold by the defendant but that the plaintiff's exposure was a substantial factor in causing the plaintiff's injury. *Richards v. Raymark Indus. Inc.*, 660 F. Supp. 599 (E.D. Pa. 1987); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216, 224–26 (Pa. 2007); *accord Robertson v. Allied Signal Inc.*, 914 F.2d 360, 375 (3rd Cir. 1990) (applying Pennsylvania law). The Pennsylvania Supreme Court held in asbestos litigation that "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in the light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between defendant's product and the asserted injury." *Gregg*, 943 A.2d at 226–27 (adopting the frequency, regularity and proximity standard in asbestos cases). As a result, a plaintiff must prove he was exposed to asbestos from a defendant's product with sufficient frequency, regularity and proximity so that a jury could make the necessary inference of an adequate causal connection between that product and the asserted injury. *Id.* at 227.

As for proximity, a plaintiff cannot merely show that the product was present at the plaintiff's workplace; he must present evidence to establish that the plaintiff inhaled asbestos fibers of the specific product of a manufacturer. *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 399 (Pa. Super. 2019); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 652 (Pa. Super. 2002), *appeal denied*, 829 A.2d 1158 (2003).

## V. ANALYSIS

Defendant moves for summary judgment because it is not liable for injuries caused by asbestos products for two reasons. First, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Viking Pump. Second, Plaintiff failed to produce sufficient evidence to satisfy her burden of showing that Mr. Gay was exposed to asbestos fibers of any product manufactured, distributed or supplied by Viking Pump on a regular, frequent or proximate basis.

"At the heart of an asbestos case is at least product identification—that is, a plaintiff cannot triumph against a manufacturer unless he shows that the victim came across the manufacturer's product and that the product caused his injury." *Mehnert v. Agilent Techs., Inc.*, No. CV 18-893, 2020 WL 1493542 (W.D. Pa. Mar. 27, 2020) (quoting *Walker v. Blackmer Pump Co.*, 367 F. Supp. 3d 360, 372 (E.D. Pa. 2019)). Such an inquiry is "fact-intensive." *Id.*

For Plaintiff to defeat Defendant's Motion for Summary Judgment, Plaintiff must show not only that Mr. Gay was exposed to asbestos-containing products with sufficient proximity, regularity and frequency to cause his injuries but also that the asbestos products to which Plaintiff claims exposure were manufactured, distributed or sold by Defendant. *Eckenrod*, 544 A.2d at 53; *see also Wilson v. A.P. Green Indus.*, 807 A.2d 922, 924 (Pa. Super. 2002) ("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fivers came from defendant's product."). The Court has a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss v. Trane*, 104 A.3d 556, 568 (Pa. Super. 2014) (citation omitted).

The record establishes that Viking Pumps may have supplied some asbestos-containing products to three locations where Mr. Gay worked during his career: the USS Blower, the USS

Blackfin and the SM-1 facility. (ECF No. 970, p. 6). Viking Pumps argues that Plaintiff has not proffered evidence that any of these pumps were used, that they incorporated asbestos-containing components or that Mr. Gay was near any work performed on the pumps that would have created respirable dust regularly or often. (ECF No. 918, pp. 6–7).

### A. The Court Grants Defendant's Summary Judgment Regarding Mr. Gay's Exposure at the SM-1 Facility.

Defendant argues that Mr. Gay's recollection of Viking Pumps at Ft. Belvoir was vague. He believed that a Viking pump was at the SM-1 but did not testify that any work was performed on the pump. Mr. Gay assumed that the pumps would have been overhauled during his tenure at the SM-1 facility but did not describe a specific instance. (ECF No. 939-5, p. 4). Simply establishing that a defendant's product was merely present at a plaintiff's place of work is insufficient. *Lindstrom v. A-C Prod. Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (quoting *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001)) (internal citation omitted). Plaintiff must prove Mr. Gay's injuries were caused by an asbestos-containing product from a specific manufacturer or supplier. *Eckenrod*, 544 A.2d at 52. Plaintiff did not provide evidence that a Viking pump was installed or maintained at the SM-1 facility while Mr. Gay worked there. Plaintiff did not testify about how long Mr. Gay was near a Viking pump.

The Court finds Plaintiff has not offered enough evidence to show that Mr. Gay was exposed to asbestos from a Viking pump at the SM-1 facility. Mr. Gay did not testify to working on the pump and could not recall a specific instance of others working on the pump. Plaintiff needed to provide evidence that asbestos from the product was somehow disturbed and that Mr. Gay inhaled asbestos from that product. *Wilson*, 807 A.2d at 924. For these reasons, the Court grants summary judgment for all alleged exposures at the SM-1 facility in Ft. Belvoir, Virginia.

## B. The Court Grants Defendant's Summary Judgment Regarding Mr. Gay's Exposure Aboard the USS Blower and USS Blackfin.

Plaintiff argues that Mr. Gay was exposed to asbestos from Viking pumps aboard the USS Blower and USS Blackfin. Viking Pumps claims that even if its pumps were installed on both submarines, Plaintiff has not presented evidence that the Viking pumps were ever disturbed. (ECF No. 918, p. 7). It also argues that the fact that the Navy may have bought some asbestos-containing products from Viking Pumps is not enough to prove that Mr. Gay was exposed to these products. (*Id.* at 6–7).

Viking Pumps argues Plaintiff's record asks the factfinder to make several assumptions. (ECF No. 918, p. 9). First, the factfinder must assume that Viking Pumps were aboard the USS Blower and USS Blackfin. (*Id.*). Second, the factfinder must assume the materials used by Mr. Gay and others contained asbestos. (*Id.*). Viking Pump recognizes that although pumps on the submarines may have been made or supplied by Viking Pump, the record does not show that those pumps were present while Mr. Gay served aboard these submarines. Mr. Gay recalled Viking pumps but did not have recall working on them or others working on them. (*Id.* at 7).

Plaintiff counters by highlighting that the work aboard the submarines took place in close quarters with the equipment at issue and with other workers who performed maintenance. (ECF No. 939, p. 13). Plaintiff also argues that it was highly likely that Mr. Gay worked on Viking Pumps equipment or that he was near others when they worked on the pump. (ECF No. 939, p. 13). Plaintiff presented the expert report of Arnold Moore, PE and Moore's reliance on Naval Archives to place Viking pumps aboard the USS Blower and USS Blackfin. (*Id.* at 10–12). Plaintiff argues that those records show that the pumps also contained asbestos. Defendant disagrees with these conclusions and highlights that Mr. Gay did not recall working with a Viking pump and did not recall others working with a Viking pump. Defendant does not dispute that it

8

sold some pumps to the U.S. Navy in the 1940s and 1950s. (ECF No. 970, p. 8). Ultimately, Defendant argues, Mr. Gay recalled only that Viking pumps were aboard the ships but did not know specifically where the pumps were located and could not recall the pump ever being removed from the line or breaking down at any time. He admitted that he had no reason to believe that he was exposed to an asbestos-containing gasket associated with a Viking pump. (ECF No. 970-1, p. 3–4, 6)

A "[t]otal failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark*, 21 F. App'x at 376 (citations omitted). A plaintiff in an asbestos products liability case must show not only that a defendant's product was present in the workplace but also that the plaintiff worked with or around the product's use. *Krauss*, 104 A.3d at 563 (Pa. Super. 2014) (citing *Eckenrod*, 544 A.2d at 52).

After reviewing the motions and exhibits and considering the evidence in the light most favorable to Plaintiff, the Court finds that the evidence submitted does not raise a genuine issue of material fact as to causation for Mr. Gay's exposure to Viking Pump products aboard any of the ships on which he served. Mr. Gay provided generic recollections and was unable to speak specifically about any Viking Pumps. The evidence does not firmly place a Viking Pump product near Mr. Gay. Nor does the record establish that those products contained asbestos.

The Court finds the evidence insufficient to establish that Mr. Gay was exposed to asbestos from Viking Pump. Thus, the Court holds no genuine issue of material exists from the record presented. For these reasons, Defendant's Motion for Summary Judgment is granted.

## VI. Conclusion

The Court finds no genuine issue of material fact exists. Defendant's Motion for Summary Judgment is granted. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6-17-21
Dated