IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISA D. GAY, *Executrix of the Estate of CARL E. GAY*,<br><br>               *Plaintiff,*<br><br>v.<br><br>A.O. SMITH CORPORATION, *et al.*,<br><br>               *Defendants.* | Civil Action No. 2:19-cv-1311<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

      Plaintiff Carl E. Gay ("Mr. Gay") sued Defendant Duquesne Light Company ("Duquesne Light"), and various other defendants in October 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that he developed mesothelioma from exposure to products containing asbestos. (ECF Nos. 1-1, 1-2). Defendant General Electric Company removed the case to this Court on the basis of federal enclave and federal officer jurisdiction. *See* 28 U.S.C. §§ 1331, 1441(a), 1442(a)(1). Mr. Gay died in April 2020, and his daughter, Allisa D. Gay ("Plaintiff"), was named executor of his estate and substituted as Plaintiff in this litigation. (ECF Nos. 676, 691, 692). Between October 2020 and June 2021, the Court considered and adjudicated numerous summary judgment motions related to product identification. Subsequently, the Court directed the defendants to file summary judgment motions "on any substantive grounds not related to product identification" by the end of October 2021, with briefing to be completed in early December 2021. (ECF No. 1087). During this second round of summary judgment motions, Duquesne Light filed a Non-Product Motion for

Summary Judgment. (ECF No. 1101). For the reasons below, the Court will grant Duquesne Light's motion.

## I. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## II. ANALYSIS

This case concerns Mr. Gay's alleged exposure to asbestos through various jobs over a period of more than four decades, between 1946 and 1989. (ECF No. 1-1, ¶¶ 162–63). As relevant here, from 1974 to 1976, Mr. Gay worked in Shippingport, Pennsylvania, at Beaver Valley Nuclear Power Station ("Beaver Valley" or "the power station"), which was owned and operated by Duquesne Light. (ECF No. 1102-1, pp. 58, 95). Duquesne Light hired the engineering company Stone & Webster to construct the power station, and Mr. Gay was employed by Stone & Webster as a quality control supervisor. (*Id.* at 57; ECF No. 1121-2, p. 14). Plaintiff alleges that Mr. Gay was exposed to asbestos while working at Beaver Valley

2

and brings three claims against Duquesne Light, including: (1) strict product liability (Count I) (ECF No. 1-1, ¶¶ 162–71); (2) negligent product liability (Count II) (*Id.* ¶¶ 173–76); and (3) negligent premises liability (Count II) (*Id.* ¶¶ 177–85). Following Plaintiff's filing of a Second Amended Complaint (ECF No. 1115) and completion of briefing on Duquesne Light's Non-Product Motion for Summary Judgment (ECF No. 1101), only the third claim—premises liability—remains in dispute.[1]

Plaintiff's premises liability claim sounds in negligence. To state a cause of action for negligence under Pennsylvania law,[2] a plaintiff must establish the traditional four elements of (1) duty, (2) breach, (3) causation, and (4) damages. *See Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272–73 (Pa. 2006); *Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 654 (Pa. Super. 2002). Whether a defendant owes a plaintiff a duty of care (the first element) is a question of law. *See Farabaugh*, 911 A.2d at 1273. In this case, Plaintiff appears to have pleaded two theories in support of the argument that Duquesne Light owed a duty to Mr. Gay—the first based on Duquesne Light's status as a landowner (ECF No. 1-1, ¶¶ 178–80) and the second based on

---

[1] In support of its motion for summary judgment, Duquesne Light argued that Plaintiff "failed to produce any evidence to support" claims against the company for "1) negligent manufacture and/or supply of asbestos products; 2) strict liability; and/or 3) punitive damages." (ECF No. 1102, p. 11). Thereafter, Plaintiff indicated that she "does not oppose" Duquesne Light's motion on such grounds. (ECF No. 1121, p. 1 n.1). The Court will, therefore, grant summary judgment in favor of Duquesne Light with respect to the claims for strict product liability (Count I), negligent manufacture and/or supply of asbestos products (Count II), and punitive damages (Counts I & II).

Duquesne Light separately argued that Plaintiff failed to properly plead a premises liability claim against the company. (ECF No. 1102, pp. 3–4). To address that deficiency, and with the consent of Duquesne Light and leave of Court, Plaintiff filed a Second Amended Complaint. (ECF No. 1115). Duquesne Light now concedes that the Second Amended Complaint "includes specific allegations against Duquesne Light relative to a premises' liability claim" and "no longer seek[s] summary judgment" based on a pleading deficiency. (ECF No. 1131, p. 2 n.1).

[2] The parties rely exclusively on Pennsylvania law in the instant filings. (*See* ECF Nos. 1102, 1121, 1131). The Court will, therefore, apply Pennsylvania law by consent of the parties.

Duquesne Light's status as an employer of an independent contractor (*Id.* ¶¶ 181–84). *See Warnick v. Home Depot U.S.A., Inc.*, 516 F. Supp. 2d 459, 465–70 (E.D. Pa. 2007) (explaining that Pennsylvania recognizes "two potential bases of [negligence] liability" against a defendant that is both "a landowner" and "a party who contracts for certain work to be performed"). As explained below, the Court holds that Duquesne Light did not owe Mr. Gay a duty under either theory. Duquesne Light is, therefore, entitled to summary judgment with respect to Plaintiff's premises liability claim.

### A. Duty as Landowner

Plaintiff's first theory of liability derives from long-established principles regarding a landowner's duty to entrants upon the land. That duty depends upon the entrant's status as an invitee, a licensee, or a trespasser. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Mr. Gay, as an employee of Stone & Webster (an independent contractor), was a business invitee while working at Beaver Valley. *See Gutteridge*, 804 A.2d at 655 ("Employees of independent contractors . . . are 'invitees' who fall within the classification of 'business visitors.'"); *see also Lonsdale v. Joseph Horne Co.*, 587 A.2d 810, 813 n.2 (Pa. Super. 1991) ("A business invitee is a person who is entitled or permitted to enter real property of another for a purpose directly or indirectly connected with business dealings between the two."). A landowner owes "the highest duty" to a business invitee, *Gutteridge*, 804 A.2d at 656, and must, with regard to nonobvious, dangerous conditions, either "use reasonable care to make the premises safe" or give "adequate and timely warning," *Crane v. I.T.E. Cir. Breaker Co.*, 278 A.2d 362, 363 (Pa. 1971). More specifically:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

4

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. L. Inst. 1965); *see also Farabaugh*, 911 A.2d at 1272 (explaining that, "[a]s developed through [Pennsylvania] caselaw, a landowner's duty [to business invitees] derives from Section 343 of the Restatement (Second) of Torts").

Duquesne Light asserts that it "owed no duty" to Mr. Gay because Plaintiff cannot satisfy paragraph (b) of § 343: "The evidence in this case fails to establish that Duquesne Light should have expected that Stone & Webster would not realize an asbestos danger (if any) encountered by its employees or would fail to properly protect its employees from such hazards." (ECF No. 1102, pp. 3, 7–8). Plaintiff makes no specific argument in response, and, in fact, entirely fails to address this first theory of liability. (ECF No. 1121); (*See* ECF No. 1131, p. 1) (Duquesne Light noting that "Plaintiff makes no effort to [satisfy the three-prong test of § 343] in her Response"). Instead, as discussed below, Plaintiff focuses solely on the second theory of liability. Plaintiff's failure to affirmatively respond to Duquesne Light's arguments with respect to the first theory constitutes an abandonment of that theory. *See, e.g., Skirpan v. Pinnacle Health Hosps.*, No. 1:07-CV-1703, 2010 WL 3632536, at *7 (M.D. Pa. Apr. 21, 2010) ("[A] Plaintiff's failure to respond to arguments raised on summary judgment effectively constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues.").

Notwithstanding Plaintiff's abandonment of the first theory, the Court concludes that it would fail on the merits. Stone & Webster was a sophisticated engineering company with significant experience in the nuclear power industry, including, for example, constructing facilities for the Manhattan Project in the 1940s and designing and constructing nuclear power

5

plants in the 1950s and 1960s. (ECF No. 1102-1, pp. 81–91). Along with that experience came knowledge of the danger of asbestos. In an internal memorandum dated March 22, 1971, a Senior Construction Manager at Stone & Webster wrote to "All Superintendents" and "Safety Engineers":

> In Safety Bulletin No. 5, issued on May 24, 1966 and entitled "Lung Disease," special emphasis was placed on the incidence of asbestosis within the construction industry. Specific reference was made to the employment of adequate ventilation and personal protective equipment to limit the exposure. In order to further alleviate the inherent danger of inhalation of asbestos fibers, the use of substitute materials in our construction work has been directed under a joint interoffice memorandum of Stone & Webster Engineering Corporation's Chief Mechanical Engineer and Chief Nuclear Engineer.
> The aforementioned Bulletin should be reviewed and discussed at various site committee meetings to insure [sic] continued compliance. As indicated by the attached memorandum, the removal of the causes of asbestosis will be a most significant step.

(*Id.* at 92). Stone & Webster thus realized the danger of asbestos at least three years—and perhaps as many as eight years—prior to Mr. Gay's arrival at Beaver Valley in 1974. Moreover, Stone & Webster purportedly endeavored to protect its employees by utilizing alternate insulation materials, providing personal protective equipment, and ensuring adequate ventilation.

The record evidence, therefore, does not support a determination that Duquesne Light should have expected that Stone & Webster would not "discover or realize the danger" of asbestos at Beaver Valley or would "fail to protect" its employees (including Mr. Gay) from such danger. Restatement (Second) of Torts § 343(b). Accordingly, Duquesne Light did not owe a duty to Mr. Gay based on its status as a landowner. *See Farabaugh*, 911 A.2d at 1273 (holding that a landowner did not owe a duty to an independent contractor's employee under § 343 because the contractor "was fully aware of the potential, non-obvious danger"); *Grace v. Henry Disston & Sons, Inc.*, 85 A.2d 118, 119 (Pa. 1952) ("The owner owes no duty to the employe[e]s of a contractor with respect to a dangerous condition which is known to the contractor.").

6

### B. Duty as Employer

Plaintiff's second theory of liability is premised on Duquesne Light's status as an employer of an independent contractor. In general, "[a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition." *Hader v. Coplay Cement Mfg. Co.*, 189 A.2d 271, 277 (Pa. 1963); *see also Farabaugh*, 911 A.2d at 1273 ("[L]andowners employing independent contractors are exempt from liability for injuries to an independent contractor's employee's . . . ."); Restatement (Second) of Torts § 409 ("[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."). Rather, Pennsylvania law "places responsibility for the protection of the contractor's employees on the contractor and the employees themselves." *Gutteridge*, 804 A.2d at 656. Nevertheless, there are two exceptions to the general rule of nonliability—the 'retained control' exception and the 'peculiar risk' exception. Plaintiff argues that both exceptions apply, or at least that there are genuine disputes of material fact which preclude summary judgment. (ECF No. 1121). The Court concludes, however, that no such disputes exist and that neither exception applies.

### 1. Retained Control

The 'retained control' exception imposes a duty of care upon an employer "who entrusts work to an independent contractor, but who retains the control of any part of the work." Restatement (Second) of Torts § 414; *see also Farabaugh*, 911 A.2d at 1273 (citing § 414 and explaining that an employer owes a duty to an independent contractor's employees if he or she "exercise[s] . . . control over the means and methods of the contractor's work"). This exception has limited application:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmt. c. In accordance with that commentary, Pennsylvania courts have narrowly construed the 'retained control' exception, "almost always finding that the hiring party did not exercise sufficient control over the contractor to impose liability on the hiring party for the contractor's employee's injury." *Warnick*, 516 F. Supp. 2d at 468 (collecting cases); *see also Beil v. Telesis Constr., Inc.*, 11 A.3d 456, 467 (Pa. 2011) ("[O]ur Commonwealth's case law has construed this exception narrowly.").

For example, in *Hader v. Coplay Cement Manufacturing Company*, 189 A.2d 271, (Pa. 1963), the Supreme Court of Pennsylvania held that the owner of a cement manufacturing plant and stone quarry was not legally responsible for injuries sustained by an independent contractor's employee after he slipped off the outer face of a stone crusher and fell approximately thirty-five feet. The owner hired the contractor to unload, assemble, and install the stone crusher, and the contractor's employee fell while attempting to install a large bolt on the crusher. *Id.* at 273–74. The employee claimed that the owner was liable for his injuries because the owner "retain[ed] control over the work of installation of the crusher," as evidenced through frequent site visits by the owner's plant manager and vice president, as well as the daily presence of a field supervisor, who provided some "technical advice" to the workers. *Id.* at 278. The Supreme Court, however, rejected those arguments. It held that the presence of the plant manager and vice president "was completely innocuous" because neither ever gave "any instructions as to the manner of installation of the crusher"; rather, they merely inspected

8

finished work, which "furnish[ed] no evidence of a right to control the workmen." *Id.* As to the field supervisor, the Supreme Court explained:

> An examination of the record clearly reveals that [the field supervisor] was acting as a "watchdog" for [the owner] to make sure that [the independent contractor] installed the crusher and erected the housing in accordance with the plans and specifications. Such status in nowise conflicted with control of the work by [the independent contractor]. . . . [O]ne who employs an independent contractor may also employ a person to ascertain that the work of the independent contractor is being done according to plans and specifications and the employment of such person in no way indicates that the independent contractor is being subjected to control. [The field supervisor's] presence on the job site on behalf of [the owner] and the functions which he performed in nowise demonstrated any control by [the owner] of the manner of installation of the crusher.

*Id.* at 278–79 (internal citations omitted). Lacking evidence that the owner "retained control of . . . the instrumentality which caused the accident," the Supreme Court ultimately held that the owner was not liable in negligence for the employee's injuries. *Id.* at 277, 279.

Here, Plaintiff argues that "the record evidence contains no indication that Duquesne Light surrendered sole control of Beaver Valley to Mr. Gay's employer, Stone & Webster." (ECF No. 1121, p. 2). She points to testimony from Mr. Gay showing that Duquesne Light "had their own quality control people" at the power plant, including an individual named Mr. Washburn, who was "head of [Duquesne Light's] field quality control." (ECF No. 1102-1, pp. 70–71). According to Mr. Gay, these Duquesne Light employees sought "a close[] overview of everything that was happening" at Beaver Valley to ensure that "everything was there and not missed." (*Id.* at 71). Moreover, there were weekly meetings "between the contractors, Stone & Webster, and Duquesne Light" "[t]o make sure everybody was . . . in the same boat." (*Id.* at 71–72).

This evidence, however, is insufficient for purposes of the 'retained control' exception. Like in *Hader*, Duquesne Light employed individuals "to ascertain that the work of the independent contractor [was] being done according to plans and specifications." 189 A.2d at

9

278. These "quality control people" (ECF No. 1102-1, p. 70) merely served as watchdogs during construction of the power plant, and there is nothing in the record to suggest that Duquesne Light ever gave Stone & Webster any specific commands or instructions. Rather, Stone & Webster, as the general contractor, was responsible for creating the specifications, coordinating the work of its employees and subcontractors, and addressing any issues that arose during construction. (ECF No. 1102-1, pp. 72, 79). In addition, Stone & Webster was responsible for procuring "the thermal insulation that was installed" at Beaver Valley. (*Id.* at 80). It was, therefore, Stone & Webster—not Duquesne Light—that controlled the "instrumentality" that may have caused Mr. Gay's injury (*i.e.*, asbestos-containing insulation). *See Hader*, 189 A.2d at 277; *see also Grace*, 85 A.2d at 121 (affirming judgment in favor of a plant owner and against an injured contractor's employee because "[t]he work was performed under conditions prescribed by the contractor" and the contractor "remained in sole control of the work location").[3]

Based on the evidence presented, no reasonable jury could conclude that Duquesne Light retained control over the means and methods of Stone & Webster's work at Beaver Valley. For that reason, the Court holds that the 'retained control' exception does not apply. *See Beil*, 11 A.3d at 467 (noting that "the question of the quantum of retained control necessary to make the owner of the premises liable is [generally] a question for the jury," but when "the evidence fails

---

[3] Plaintiff cites to *Cooper v. Heintz Manufacturing Company*, 122 A.2d 699 (Pa. 1956), but that case is inapposite. In *Cooper*, the Supreme Court of Pennsylvania affirmed a jury verdict against the owner of a power plant and in favor of a contractor's employee who suffered electrocution because the owner "continued to exercise control over the damaging instrumentality (the lethal transformers) while the independent contractor was working." *Id.* at 702. In fact, it was the owner that "remained in sole control" of "the flow of electricity into the transformer room." *Id.* Contrary to the underlying facts in *Cooper*, and as explained above, there is no evidence in this case that Duquesne Light retained control over "the damaging instrumentality"—that is, any asbestos-containing products.

to establish the requisite retained control, the determination of liability may be made as a matter of law").

### 2. Peculiar Risk

Under the 'peculiar risk' exception, an employer owes a duty of care to an independent contractor's employees if the contracted work poses "a peculiar risk of physical harm" or "a special danger." Restatement (Second) of Torts §§ 416, 427; *see also Farabaugh*, 911 A.2d at 1275–76 (citing § 416 and § 427 and stating that "the doctrine of peculiar risks or special dangers [is] an exception to the doctrine of non-liability for owners out of possession"). Like the 'retained control' exception, the 'peculiar risk' exception is narrow. *See Rudy v. A-Best Prods. Co.*, 870 A.2d 330, 335 (Pa. Super. 2005) ("Courts must construe the 'peculiar risk' doctrine narrowly, in recognition of the fact that most construction work contains some element of risk."). It applies only if "(1) a risk is foreseeable to the employer of an independent contractor at the time the contract is executed," and "(2) the risk is different from the usual and ordinary risk associated with the general type of work done." *Gutteridge*, 804 A.2d at 656–57.

In this case, Plaintiff asserts that (1) "there is no doubt that by 1974, when Mr. Gay started working at Beaver Valley, the hazards of asbestos were foreseeable to Duquesne Light," and (2) "there is a genuine issue of fact concerning the 'peculiar' nature of the hazard of Mr. Gay's asbestos exposure." (ECF No. 1121, pp. 5, 7). Duquesne Light makes no argument with respect to the first prong, apparently conceding the issue. (ECF No. 1131, p. 7). Instead, Duquesne Light focuses on the second prong, contending that "Plaintiff has offered no evidence that the work Mr. Gay performed at Beaver Valley 'involved circumstances which were substantially out of the ordinary.'" (*Id.*).

Duquesne Light points to a similar case from the Superior Court of Pennsylvania. *See Rudy v. A-Best Prods. Co.*, 870 A.2d 330 (Pa. Super. 2005). In *Rudy*, an employee of an independent contractor who "routinely installed and removed asbestos-containing material" at a nuclear power station and who later developed mesothelioma brought negligence claims against several premises defendants. *Id.* at 332, 335. The employee asserted, *inter alia*, that the premises defendants were liable under the 'peculiar risk' exception. *Id.* at 335. The Superior Court, however, rejected that assertion. It explained:

> Even assuming *arguendo* that [the plaintiffs] established the first prong of the "peculiar risk" test (foreseeability), it is clear that [the plaintiffs] did not create a material issue of fact on the second prong. [The plaintiffs] cited to no evidence that [the employee's] work involved circumstances which were substantially out of the ordinary. It is undisputed that [the employee] routinely installed and removed asbestos-containing material. In other words, asbestos exposure was a common (albeit serious) risk of [the employee's] job. [The plaintiffs] have failed to point to any aspect of [the employee's] job which can be fairly characterized as a "peculiar risk." [The plaintiffs] do accurately note that asbestos is an inherently dangerous product, but this does not in and of itself establish a **peculiar** risk to someone such as [the employee]. This claim fails.

*Id.* (emphasis in original) (internal citation and quotation marks omitted). The Superior Court thus affirmed the trial court's grant of summary judgment in favor of the defendants. *Id.* at 332.

Plaintiff, for her part, cites to a different case from the Superior Court of Pennsylvania. *See Chenot v. A.P. Green Servs.*, 895 A.2d 55 (Pa. Super. 2006). *Chenot*, like *Rudy*, involved an independent contractor's employee who was allegedly exposed to asbestos at a manufacturing facility, developed mesothelioma, and brought negligence claims against the premises owner. *Id.* at 58–59. But unlike in *Rudy*, the Superior Court in *Chenot* reversed the trial court's grant of summary judgment in favor of the premises owner and remanded for further proceedings, reasoning—with respect to the 'peculiar risk' exception—that "there *might* just be a triable issue on whether [the employee's] work involved a risk different from the usual and ordinary risk associated with the general type of work done in his job." *Id.* at 67 (emphasis added). The

12

Superior Court did not, however, hold that such a determination is *always* a "triable issue"—the implication that Plaintiff presses here (ECF No. 1121, pp. 6–7)—or even that it was necessarily a "triable issue" in that case. Rather, the outcome in *Chenot* depended largely on the procedural posture of the case: the trial court not only ruled on the summary judgment motion while several discovery requests were outstanding, but it also failed to address the 'peculiar risk' exception. *Chenot*, 895 A.2d at 59–60, 62. The Superior Court thus found that the summary judgment decision "might have been premature" and remanded to the trial court for further proceedings—including an assessment of the facts supporting the 'peculiar risk' exception. *Id.* at 66–67.

Upon review of the record evidence in this case, the Court concludes that Plaintiff has failed to create a genuine issue of material fact with respect to the second prong of the 'peculiar risk' exception. To be sure, "asbestos is an inherently dangerous product." *Rudy*, 870 A.2d at 335. But like in *Rudy*, "asbestos exposure was a common (albeit serious) risk" of Mr. Gay's work. *Id.* After all, in the present litigation, Mr. Gay alleges that he suffered occupational exposure to asbestos for more than forty years—more than twenty-five years of which were prior to his arrival at Beaver Valley. (ECF No. 1-1, ¶¶ 162–63). Mr. Gay further testified that he observed "dust at every construction site from everything you can think of" and that "the dustiest activity" at Beaver Valley was the "cutting or manipulating of thermal insulation." (ECF No. 1102-1, p. 74). Thus, even though Mr. Gay worked in quality control at Beaver Valley and did not have a hands-on role, his alleged exposure to asbestos fibers was a "usual and ordinary risk" of "the general type of work done" at a construction site during that period of time (*i.e.*, when asbestos was frequently used as an insulating material). *Gutteridge*, 804 A.2d at 657.

In short, no reasonable jury could find that Mr. Gay's work at Beaver Valley "involved circumstances which were substantially out of the ordinary." *Rudy*, 870 A.2d at 335 (citation omitted). Accordingly, the Court holds that the 'peculiar risk' exception is inapplicable.

### C. Conclusion—Premises Liability

In sum, Duquesne Light—either as the owner of Beaver Valley or the employer of the independent contractor Stone & Webster—did not owe a duty of care to Mr. Gay. Plaintiff's premises liability claim thus fails at the outset, and Duquesne Light is entitled to summary judgment. *See Van Zandt v. Holy Redeemer Hosp.*, 806 A.2d 879, 886 (Pa. Super. 2002) ("Where the plaintiff fails to carry her burden of proof,"—including "demonstrat[ing] that the defendant owed a duty of care to the plaintiff"—"judgment in the defendant's favor is the appropriate remedy." (citations omitted)).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Duquesne Light's Non-Product Motion for Summary Judgment (ECF No. 1101). Orders of Court will follow.

BY THE COURT:

*[signature]*

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated:

2/15/22